# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| JAMES WILLIS BONDS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CO DONALD LUKIMA, et al., )<br>)<br>Defendants. ) | Case No. 4:11-cv-03615-RBP-JHE |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff James Willis Bonds has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged during his incarceration at St. Clair Correctional Facility in Springville, Alabama. Plaintiff is incarcerated at Holman Correctional Facility in Atmore, Alabama. Plaintiff names Correctional Officers Donald Lukima, Christopher Smith, and former Correctional Officer Matthew Dixon as defendants.[1] Plaintiff seeks monetary and injunctive relief.[2]

---

[1] Plaintiff also named former Correctional Officer Erin Merchant as a defendant. (Doc. 1) However, Merchant was not served with a copy of the complaint within 120 days after the complaint was filed. On November 29, 2012, Plaintiff's claims against Merchant were dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m). (Doc. 48.)

[2] In addition to monetary relief, Plaintiff requests that Defendants face criminal charges for assault and battery. (Doc. 1 at 4.) A private citizen has no "judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). If Plaintiff desires a criminal investigation into his claims, he must direct the same to the appropriate county, state, or federal law enforcement officials. This court is without authority to grant the requested relief. *See Otero v. United States Attorney General*, 832 F.2d 141 (11th Cir. 1987).

Under the usual practices of this Court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. PROCEDURAL HISTORY

On February 22, 2012, the court entered an Order for Special Report, directing a copy of the complaint in this action be forwarded to the defendants and requesting they file a Special Report addressing the factual allegations of Plaintiff's complaint. (Doc. 11.) Defendants were advised that the Special Report should be accompanied by sworn statements and, if appropriate, would be considered as a motion for summary judgment, filed pursuant to Rule 56, Fed. R. Civ. P. *Id.* By the same order, Plaintiff was advised that after he received a copy of the Special Report submitted by Defendants, he should file counter-affidavits if he wished to rebut the matters presented by Defendants in the Special Report. *Id.*

On April 24, 2012, Defendants Donald Lukima and Christopher Smith filed a Special Report accompanied by affidavits and other institutional documents. (Doc. 14.) On May 18, 2012, Defendants Lukima and Smith supplemented their Special Report. (Doc. 22.) On November 26, 2012, Defendant Matthew Dixon submitted an affidavit and adopted Lukima and Smith's Special Report. (Doc. 46.) Plaintiff was notified that Defendants' Special Report would be construed as a motion for summary judgment and he would have twenty days to respond by filing affidavits and other material if he chose. (Doc. 49.) He was also advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). Plaintiff filed a response on December 20, 2012. (Doc. 51.)

## I. SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law.  Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, can show some evidence regarding each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).

> As the Eleventh Circuit Court of Appeals has explained:
>
> > Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prime facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

## II.  BACKGROUND FACTS

The following facts are undisputed or, if disputed, taken in a light most favorable to plaintiff.[3] On September 3, 2011, at approximately 7:00 p.m., Correctional Officers Erin Merchant, Matthew Dixon, and Christopher Smith were performing a security check of P-2 Block.  (Doc.1 at 3.)  Officers Merchant and Dixon entered Plaintiff's cell to retrieve a cell phone.  (Doc. 46, Dixon Aff. at 2.)  The officers ordered Plaintiff to take off his clothes, squat, and cough.  (Doc. at 3.)   The officers then searched Plaintiff's clothes and his cell.  *Id*.  They eventually found the cell phone in a pair of pants on the floor.[4]  *Id*.

The officers then surrounded Plaintiff and cornered him in the back of the cell.  (Doc. at 3.) They asked, "'Why you take us through all this bullshit, huh?'" *Id*.  Plaintiff asked to see the shift supervisor.  *Id*.  Merchant attempted to hit Plaintiff, but Plaintiff pushed him away.  *Id*.  Smith sprayed Plaintiff in the facial area with chemical agent Sabre Red.  (Doc. 14, Smith Aff. at 2.) Merchant, Dixon, and Smith then beat Plaintiff.  (Doc. 1 at 3-4.)  Plaintiff claims he was naked and not resisting or fighting the officers.  *Id*. at 4.  Lying next to plaintiff were two handmade metal

---

[3]  Factual disputes made by a particular defendant are addressed in footnote form.

[4]  Defendant Dixon alleges:

> Officer Merchant gave inmate Bonds a direct order to give him (Merchant) the cell phone.  Inmate Bonds placed the cell phone inside his pants.  Officer Merchant ordered inmate Bonds to strip.  Inmate Bonds removed his pants and sat down on [his] bed while removing his shorts.  Inmate Bonds removed his shorts and was holding them.  Officer Merchant reached for the shorts and a cell phone fell to the floor.

(Doc. 46, Dixon Aff. at 2.)

knives. (Doc. 46, Dixon Aff. at 2.) The officers handcuffed plaintiff and sat him on the bed. (Doc. 1 at 4.) The incident was deemed contained over the radio.[5]  *Id*.

Dixon and Smith stood at the cell entrance and Merchant stood over Plaintiff cursing at him. *Id*. Officer Donald Lukima walked past Dixon and Smith and yelled out, "Motherfucker," and struck Plaintiff in the left eye, knocking him over. *Id*. at 4-5. Merchant and Dixon joined in with Lukima and beat Plaintiff while he was handcuffed behind his back. *Id*. at 5. They also sprayed mace in his eyes and face while Smith watched the door. *Id*. When inmates crowded around, Smith directed the officers to stop.[6]   (Doc. 1 at 5.)

Plaintiff was taken to the infirmary. *Id*. Medical staff examined Plaintiff and noted his left eye was swollen and he had a one inch laceration under his lower eye lid. (Doc. 14, Ex. 3 at 4.) Plaintiff also had a one to one and a half inch laceration to his left arm he received two or three days before. *Id*. Medical staff cleaned both of Plaintiff's eyes and applied a steri-strip underneath his left eye. *Id*. Staff also changed the bandage to Plaintiff's left arm from his previous injury. *Id*. Plaintiff was then placed in segregation. (Doc 1 at 5.)

---

[5] Defendants assert that when Merchant reached for Plaintiff's cell phone, Plaintiff jumped on top of Merchant to get the phone. (Doc. 46, Dixon Aff. at 2; Doc. 14, Ex. 1, Smith Aff. at 2.) Dixon claims, "Officer Merchant attempted to stand and push inmate Bonds away. I grabbed inmate Bonds under his right armpit with my right hand and placed my left hand in the middle of inmate Bonds' back [and] placed inmate Bonds against the wall." (Doc. 46, Dixon Aff. at 2.) He alleges that only the minimum amount of force was used in order to control plaintiff. *Id*.

Smith alleges that Plaintiff continued to struggle with officers and could not be controlled. (Doc. 14, Ex. 1, Smith Aff. at 2.) As a result, Smith sprayed Plaintiff in the facial area with Sabre Red. *Id*.

[6] Dixon, Smith, and Lukima deny using excessive force against Plaintiff or witnessing any force used against Plaintiff. (Doc. 14, Ex. 1, Smith Aff. at 2; Ex. 2, Lukima Aff. at 1-2; Doc.. 46, Dixon Aff. at 2-3.) Dixon and Smith claim that only a reasonable amount of force was used to control Plaintiff. (Doc. 14, Ex. 1, Smith Aff. at 2; Doc. 46, Dixon Aff. at 1.) Lukima contends that when he arrived at P-2 Block, the incident was under control and Plaintiff was handcuffed. (Doc. 14, Ex. 2, Lukima Aff. at 1.)

On the morning of September 4, 2011, Plaintiff was escorted to the infirmary again because his left eye was bleeding through the bandages. *Id.* Nurse Stone called Dr. Talley, and Plaintiff was taken to Cooper Green Hospital. *Id.* Plaintiff was diagnosed with a medial orbital wall fracture to his left eye. (Doc. 14, Ex. 4 at 21, Ex. 6 at 3.)

Plaintiff was charged with assault on a person associated with the Alabama Department of Corrections, unauthorized possession of a weapon or device that could be used as a weapon, and possession of contraband. (Doc. 14, Ex. 3 at 3.)

## IV. DISCUSSION

### A.     Sovereign Immunity

To the extent Plaintiff's constitutional claims are brought against the individual defendants in their official capacities for monetary relief, Plaintiff's claims are due to be dismissed under the doctrine of sovereign immunity. It is well established that the Eleventh Amendment to the United States Constitution bars 42 U.S.C. § 1983 claims against the state or an agency of the state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Likewise, lawsuits against a state official in his or her official capacity are suits against the state when "the state is the real, substantial party in interest." *Id*. at 101. Although Eleventh Amendment immunity protects state officials from suits for money damages, actions against a state official for prospective injunctive relief are outside the protection offered by the Eleventh Amendment. *Id*. at 102-03; *see Carr v. City of Florence*, 916 F.2d 1521, 1524 n.2 ( 11th Cir. 1990).

Based on the foregoing, plaintiff's claims against the defendants, in their official capacities for monetary relief, are due to be dismissed. The remainder of this report and recommendation will address Plaintiff's claims against the defendants in their individual capacities.

B.	**Eighth Amendment – Excessive Force**

Plaintiff alleges that on September 3, 2011, Officers Smith, Dixon, and Lukima assaulted him. Plaintiff's excessive force claims against these individuals must be analyzed under the standard set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992) and *Whitley v. Albers*, 475 U.S. 312 (1986). *See Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). In *Hudson v. McMillian*, the Supreme Court held that in assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison official to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 9 (internal citations omitted).

With these concerns in mind, the Supreme Court set out certain factors that should be considered when evaluating whether the force used was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Id*. at 7; *see Hewett v. Jarrad*, 786 F.2d 1080, 1085 (11th Cir. 1986).

In applying the foregoing factors to the facts of a case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). The Eighth Amendment's prohibition of "cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9 (internal citations omitted).

Construing the facts in a light most favorable to Plaintiff, Smith, Dixon, and Lukima intentionally and maliciously attacked Plaintiff. No force was needed against Plaintiff because he followed the officers' orders and did not resist. Plaintiff does not dispute he was in possession of a cell phone and two homemade knives. Plaintiff alleges that after he requested to see a shift supervisor, Merchant attempted to hit him but Plaintiff pushed Merchant away. Smith sprayed Plaintiff in the face with Sabre Red and then Merchant, Dixon, and Smith beat Plaintiff before handcuffing him. Plaintiff claims he was naked and not resisting or fighting the officers.

Next, Plaintiff asserts that Dixon and Smith stood at the cell entrance and Merchant stood over Plaintiff cursing at him. Plaintiff alleges that Lukima walked past Dixon and Smith and yelled out, "Motherfucker," and struck Plaintiff in the left eye, knocking him over. He claims Merchant and Dixon joined in with Lukima and beat him while he was handcuffed behind his back and sprayed him with mace while Smith watched the door. Because of Defendants' alleged excessive force, Plaintiff sustained a laceration under his lower eye lid and a medial orbital wall fracture to his left eye.

Smith and Dixon claim that when Merchant took Plaintiff's cell phone, Plaintiff jumped on top of Merchant's back to get the phone. They allege that Merchant pushed Plaintiff away and Dixon grabbed Plaintiff under his right armpit, placed his other hand in the middle of Plaintiff's back, and

8

placed him against the wall. Smith states that after Plaintiff continued to struggle, he sprayed Plaintiff with Sabre Red. Smith and Dixon contend they only used the necessary force to gain control over Plaintiff. Lukima claims that when he arrived at P-2 Block, the incident involving Plaintiff was under control and Plaintiff was handcuffed. All defendants deny using excessive force against Plaintiff or witnessing anyone else use excessive force against him.

It is well established that assessing the credibility of the allegations made by a plaintiff or defendant is beyond the scope of a trial court's ruling on a motion for summary judgment. *See*, *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986); *see also, Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1986). The facts presented by both parties show that a genuine dispute exists between plaintiff's and defendants' versions of the facts in connection with the September 3, 2011 incident. Defendants' motion for summary judgment on plaintiff's Eighth Amendment excessive force claims is due to be denied.

Defendants argue they are entitled to qualified immunity concerning plaintiff's Eighth Amendment excessive force claims.

> In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution . . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation . . . . The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment. If he has done so, that is the end of the inquiry.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Because Plaintiff has alleged facts sufficient to survive a motion for summary judgment concerning his excessive force claims, defendants' motion for summary judgment on the basis of qualified immunity is also due to be denied.

**C.     Eighth Amendment – Failure to Protect**

Plaintiff alleges that Officer Lukima walked past Officers Dixon, Merchant, and Smith and struck Plaintiff in the eye while he was handcuffed and sitting on his bed. Plaintiff contends that the officers failed to stop Lukima from hitting him.

Plaintiff further alleges that after Lukima struck him, Merchant and Dixon joined Lukima in beating Plaintiff and spraying mace in his eyes and face. Smith allegedly watched the door while this assault took place. When inmates gathered around, Smith directed the officers to stop.

The Eighth Amendment's prohibition on cruel and unusual punishment imposes upon institutional officials the duty to "'take reasonable measures to guarantee the safety of the inmates'" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). It is clear, however, that not every injury suffered by an inmate "translates into constitutional liability for prison officials responsible for [the inmate's] safety." *Farmer*, 511 U.S. at 834; *see also Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986).

"In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981)). It is only when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively, "sufficiently serious," harm that a constitutional violation occurs. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware

of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he . . . draw[s] th[at] inference." *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived, but did not," is not sufficient to establish liability on the part of the official. *Id*. at 838. Furthermore, "the known risk of injury must be a 'strong likelihood, rather than a mere possibility.'" *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983)).

Once it is established that an institutional official knew of a substantial danger or risk to an inmate, it must then be shown that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference requires "a state of mind more blameworthy than negligence." *Id*. at 835.

Plaintiff has not sufficiently alleged that Dixon and Smith failed to protect him from Lukima before Lukima struck plaintiff in the eye. Plaintiff does not allege that Dixon or Smith had any indication when Lukima walked past them he was going to strike Plaintiff. Neither does Plaintiff allege these officers were in such close proximity and in a position to physically stop Lukima from striking Plaintiff. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (while an officer can be liable for failing to take reasonable steps to protect the victim of another officer's use of excessive force, in order for liability to attach, the officer must have been in a position to intervene). Therefore,

Dixon and Smith's motion for summary judgment on Plaintiff's claim they failed to protect him from Lukima before Lukima hit him is due to be granted.

However, Plaintiff has sufficiently alleged a failure to protect claim against Smith for failing to protect Plaintiff from the second beating involving officers. According to the factual allegations presented by Plaintiff, Smith witnessed Dixon, Merchant, and Lukima use excessive force against Plaintiff but failed to intervene. Instead, Smith watched the door, acting as a lookout. When inmates gathered around, Smith directed Dixon, Merchant, and Lukima to stop beating Plaintiff. This type of allegation, if proven, establishes that Smith knew of a substantial danger to Plaintiff but was deliberately indifferent to Plaintiff's safety. *See Skrtich v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for nonfeasance."); *see also Davidson v. Cannon*, 474 U.S. 344, 348-49 (1986) ("Petitioner's claim, based on respondents' negligence, is quite different from one involving injuries caused by an unjustified attack by prison guards themselves, or by another prisoner where officials simply stood by and permitted the attack to proceed.").

Smith states in his affidavit that only reasonable force was used to gain control of Plaintiff and that he did not witness Merchant, Dixon, or Lukima use excessive force against plaintiff. (Doc. 14, Ex. 1, Smith Aff. at 2.)

Assessing the credibility of the allegations made by a plaintiff or defendant is beyond the scope of a trial court's ruling on a motion for summary judgment. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also, Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). The facts presented by both parties show a genuine dispute over whether Smith

12

failed to protect plaintiff from Merchant, Dixon, and Lukima's alleged use of excessive force on September 3, 2011. Therefore, Smith's motion for summary judgment as to Plaintiff's claim he failed to protect him from assault by Merchant, Dixon, and Lukima is due to be denied.

To the extent Smith contends he is entitled to qualified immunity, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If a constitutional right would have been violated under the plaintiff's version of the facts, "the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

First, Plaintiff's version of the facts – that Smith was present when Merchant, Dixon, and Lukima allegedly assaulted him but failed to intervene – establishes a constitutional violation. *See Skrtich v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002); *see also Davidson v. Cannon*, 474 U.S. 344, 348-49 (1986). Second, the duty of an officer to protect inmates in their care from assault by fellow officers had been established for years prior to Smith's alleged failure to intervene or protect the plaintiff on this occasion. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1560 (11th Cir. 1993), *as amended*, 14 F.3d 583 (11th Cir. 1994) ("A police officer has a duty to intervene when another officer uses excessive force."); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986) ("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983."). Smith's motion for summary judgment on the basis of qualified immunity is also due to be denied.

## VI. RECOMMENDATION

Accordingly, for the reasons stated above, the magistrate judge RECOMMENDS the following:

1. Defendants' motion for summary judgment on Plaintiff's claims against them in their official capacities for monetary relief is due to be **GRANTED** and the claims are due to be **DISMISSED WITH PREJUDICE**;

2. Defendants' motion for summary judgment on Plaintiff's Eighth Amendment excessive force claims against Defendants Smith, Dixon, and Lukima is due to be **DENIED**;

3. Defendants' motion for summary judgment on Plaintiff's Eighth Amendment excessive force claims against Defendants Smith, Dixon, and Lukima on the basis of qualified immunity is due to be **DENIED**;

4. Defendants' motion for summary judgment on Plaintiff's Eighth Amendment failure to protect claims against Defendants Smith and Dixon for failing to protect him from allegedly being struck by Defendant Lukima is due to be **GRANTED** and the claim is due to be **DISMISSED WITH PREJUDICE**;

5. Defendants' motion for summary judgment on Plaintiff's Eighth Amendment failure to protect claim against Defendant Smith for failing to protect him from Defendants Merchant, Dixon and Lukima's alleged use of force is due to be **DENIED**; and

6. Defendants' motion for summary judgment on Plaintiff's Eighth Amendment failure to protect claim against Defendant Smith for failing to protect him from Defendants Merchant, Dixon, and Lukima's alleged use of force on the basis of qualified immunity is **DENIED**.

## VII. NOTICE OF RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court.  **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.**  Failure to do so will bar any later challenge or review of the factual findings **or legal conclusions** of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S. Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record.  The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is DIRECTED to serve a copy of this report and recommendation upon the plaintiff.

DONE this 21st day of August 2013.

_____
JOHN H. ENGLAND, III
UNITED STATES MAGISTRATE JUDGE